IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EPIR TECHNOLOGIES, INC., | ) |
| Plaintiff, | ) ) ) Case No. 10-4949 |
| vs. | ) ) JURY DEMAND |
| SUNOVIA ENERGY TECHNOLOGIES, INC., | ) ) ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff EPIR Technologies, Inc. ("EPIR"), by and through its attorneys, Latham & Watkins LLP, hereby alleges as follows as and for its complaint against Sunovia Energy Technologies, Inc. ("Sunovia"):

### I. INTRODUCTION

1. In 2007, EPIR, an Illinois small business, and Sunovia, a Florida public company, entered into a ten-year agreement whereby EPIR agreed to research, develop, and supply certain mutually agreed upon solar products to Sunovia in return for a fixed set of cash payments (the "RDS Agreement," as amended and restated on January 24, 2008, and later amended on April 15, 2009). At first, Sunovia made these payments, but as its financial condition (and stock price) deteriorated over time, Sunovia refused to pay, thereby breaching its contractual obligations to EPIR. Today, Sunovia is months behind in its payments, and certain of its past payments of stock in lieu of cash have been rendered worthless through various restrictions that Sunovia wrongfully has put in place with respect to such stock. What's more, Sunovia has blatantly misrepresented the nature of its agreement with EPIR and violated other provisions of the RDS Agreement. EPIR

brings this suit for monetary compensation and other relief stemming from damages it has suffered under the parties' contract.

## II. THE PARTIES

2. Plaintiff EPIR is a private company incorporated under the laws of the State of Illinois. EPIR has its principal place of business in Bolingbrook, Illinois.

3. Defendant Sunovia is a public company incorporated under the laws of the State of Nevada. Sunovia has its principal place of business in Sarasota, Florida.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a), in that the parties are diverse and the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

5. Venue lies in this District under 28 U.S.C. § 1391(a), in that a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## IV. GENERAL FACTUAL ALLEGATIONS

### The RDS Agreement and Sunovia's Payment Obligations

6. Pursuant to the RDS Agreement, Sunovia agreed to make payments to EPIR to fund the development of certain mutually agreed upon solar-related products (the "EPIR Products"). In exchange for Sunovia's payments, Sunovia received: (1) the exclusive right to resell the EPIR Products; (2) the exclusive right to resell other products that EPIR separately decided to make available to Sunovia for resale (the "EPIR Independent Products"); and (3) the right to jointly share in the profits attributable to the sale of EPIR Products and EPIR Independent Products, whether those products were sold by EPIR or Sunovia.

7.    The RDS Agreement provided a schedule of the required payments that Sunovia would need to make in return for the various benefits conferred on Sunovia under the agreement. The 10-year agreement began in 2007 and was scheduled to last through 2017.

### Sunovia Cannot Meet Payment Obligations and Therefore Agrees To Provide Stock In Lieu of Cash for a Limited Time Period

8.    By the second year of the agreement, Sunovia was suffering serious financial difficulties as a public company. As is depicted in the graph below, the trading price of Sunovia's shares (ticker: "SUNV.OB") succinctly describes its fortunes. Sunovia's shares plummeted from nine dollars per share in early 2008 to nine cents per share on April 1, 2009. Sunovia's shares are currently trading at an even lower price of four cents per share.



*Sunovia Energy Tech Share Price Chart*, Yahoo! Finance, http://finance.yahoo.com (last visited Aug. 6, 2010) (listing historical prices for Sunovia, or "SUNV.OB").

9.    By the spring of 2009, Sunovia was having difficulty making the cash payments required by the RDS Agreement. At that time, the parties agreed to amend the RDS Agreement such that Sunovia for a limited period of time could provide EPIR with Sunovia stock in lieu of the cash payments specified in the RDS Agreement. The understanding was that EPIR would be able

3

to trade this stock on the open market in order to obtain liquidity since Sunovia was not able to make direct cash payments itself. The parties agreed that Sunovia could make its scheduled payments in stock in lieu of cash from the spring of 2009 through March 1, 2010, but would then be required to resume making cash payments on June 1, 2010.

### Sunovia Breaches Notification Obligations Under the RDS Agreement

10. In addition to setting a specified schedule for Sunovia's payments to EPIR, the RDS Agreement also set forth the parties' obligations and rights regarding any public statements made by either side regarding each other or their agreement. Specifically, the RDS Agreement expressly prohibited Sunovia from making any public statement about the relationship and the activities of EPIR and Sunovia under the contract without EPIR first being given a chance to review and approve such statement.

11. Beginning in the fall of 2009, Sunovia repeatedly breached this provision. Sunovia's breaches were particularly problematic because Sunovia was blatantly misrepresenting the nature of the parties' relationship and agreement in those public statements.

12. In particular, Sunovia (either through its Chief Executive Officer or in its press releases or public disclosures via the Securities and Exchange Commission) made the following false statements: (1) Sunovia owns EPIR; (2) the EPIR office in Bolingbrook, Illinois is a Sunovia office; (3) EPIR is Sunovia's research and development division; (4) the parties were partners; and (5) Sunovia is in pilot production of its photocells and will be mass manufacturing such photocells on or about November 2010 (when in fact EPIR was still developing the solar cells at issue and there was no agreed upon schedule to begin pilot production or mass manufacturing of such cells). None of these false statements were reviewed and approved by EPIR prior to Sunovia making them.

13. Many of these statements were also directly contrary Section 4.2 of the RDS Agreement. In this section, the parties agreed that the relationship between Sunovia and EPIR "shall be that of independent contractors" and they "shall not be considered partners, joint venturers, agents or legal representatives of each other for any purpose."

14. As an example of one of Sunovia's improper statements, on November 2, 2009, Sunovia's Chief Executive Officer specifically told attendees of the Energy Options conference in Port Charlotte, Florida that EPIR's office was Sunovia's "lab" and that Sunovia has a facility in Sarasota and "also a facility right outside of Chicago in Bolingbrook." These statements were false, and Sunovia's Chief Executive Officer knew as much at the time he made them. A video recording of this presentation was made available through Sunovia's website shortly after it occurred.

15. EPIR notified Sunovia of certain of its breaches of the RDS Agreement through these misrepresentations shortly after it learned of them. Nonetheless, Sunovia continued to make additional false representations about EPIR and the scope of the RDS Agreement after receiving this notice.

16. For example, in the spring of 2010, Sunovia claimed in the "About Sunovia Energy Technologies, Inc." portion of its press releases that it owns the "exclusive marketing rights to products produced by EPIR Technologies, Inc., including infrared sensors and devices for the civilian and military night vision markets." This statement substantially exaggerates the scope of the exclusivity provisions set forth in the RDS Agreement.

17. Sunovia included similar statements in its public filings with the Securities and Exchange Commission in 2010. For example, in its Form 10-Q filed on March 22, 2010, Sunovia claimed that "[t]he net profits resulting from the sale of ***any and all EPIR products***, EPIR

5

Independent Products, and related products of the Company, directly or indirectly, to any and all third parties will be split equally between EPIR and the Company." This statement was not submitted to EPIR in advance of being made for its review and approval. More importantly, the statement is not true, as only EPIR Products and EPIR Independent Products (as those terms were defined in the RDS Agreement) and certain other related products (defined in the RDS Agreement as "SETI Products") are subject to such a profit split. As explained above, Sunovia does not have exclusive marketing rights for any other EPIR products. Moreover, EPIR retained the right to sell EPIR Products and EPIR Independent Products under Section 7.2 of the RDS Agreement, thereby limiting Sunovia's exclusivity to the *resale* of such products. Accordingly, Sunovia's statement regarding exclusivity exaggerated the rights given Sunovia under the RDS Agreement.

18. Sunovia's March 22, 2010 Form 10-Q also includes a vague statement regarding exclusivity over EPIR products that could be easily misinterpreted by investors and again refers to the parties' relationship as a "partnership" notwithstanding the express provision to the contrary in Section 4.2 of the RDS Agreement.

19. By March 24, 2010, EPIR expressly revoked any and all prior approvals of public statements to ensure that Sunovia would strictly adhere with Sections 4.1 and 4.2 of the RDS Agreement and provide EPIR with advance notice of any and all statements regarding EPIR and the parties' relationship. Nonetheless, Sunovia continued to make public statements about EPIR and the parties' relationship without seeking such prior review and approval from EPIR. What's more, many of these public statements were false.

**Sunovia Breaches Certain Payment Obligations Under the RDS Agreement**

20. In accordance with the RDS Agreement, EPIR sold Sunovia 30 units of EPIR Independent Products for resale and invoiced Sunovia for those products. These products were ultimately resold by Sunovia to a customer for $165,000. Pursuant to Section 10.5 of the RDS Agreement, Sunovia's payment with respect to these products was due on or before December 5, 2009 and January 7, 2010, respectively. EPIR notified Sunovia that it owed EPIR $156,750, plus interest, for these products.

21. Sunovia has failed to make this payment despite the fact that EPIR provided express notice of Sunovia's breach of contract with respect to this payment.

22. More importantly, on June 1, 2010, Sunovia was required to make its first cash payment under the RDS Agreement since the parties had amended the contract to allow for the provision of stock in lieu of cash for the limited time period. The RDS Agreement expressly required that Sunovia pay $1,000,000 in cash on June 1, 2010. Nonetheless, Sunovia failed to make that payment, and tried to justify its non-payment by claiming that EPIR had previously breached its obligations under the RDS Agreement. Sunovia's claims regarding EPIR's breach were without merit and constituted nothing more than an attempt to excuse Sunovia's own repeated breaches of the contract.

23. On June 1, 2010 and June 4, 2010, EPIR provided Sunovia with two separate notices regarding Sunovia's breach of the RDS Agreement due to its failure to make the June 1, 2010 $1,000,000 payment. The applicable cure period provided for in the RDS Agreement with respect to that breach expired on July 19, 2010. To date, Sunovia has still not made the required payment, nor has it paid the interest specified in Section 10.5 of the RDS Agreement.

24. The RDS Agreement expressly provides that the failure to make the required $1,000,000 payment constitutes a material breach of the contract.

25. On July 20, 2010, EPIR terminated the RDS Agreement as a consequence of Sunovia's material breach of the contract and the other breaches specified herein. Sunovia's obligations to make the product payments and the June 1, 2010 funding payment expressly survive the termination of the RDS Agreement.

## Sunovia Wrongfully Refuses to Remove Restrictions on Sunovia Shares it Provided In Lieu of Cash

26. On May 14, 2010, EPIR presented certain certificates representing almost 10 million shares of Sunovia stock (worth roughly $2 million in today's share prices) to Sunovia's Transfer Agent to remove restrictive legends preventing EPIR from trading these shares on the open market. EPIR received these shares from Sunovia under the RDS Agreement in lieu of cash when Sunovia did not have enough money to fulfill its financial obligations under the RDS Agreement. The restrictive legends on the shares needed to be removed before EPIR could trade the Sunovia stock.

27. At the same time Sunovia was breaching the RDS Agreement and failing to pay the sizable amounts it owed to EPIR, Sunovia's Transfer Agent informed EPIR on June 3, 2010 that Sunovia had instructed the Transfer Agent to reject EPIR's request to remove the restrictive legends on the shares tendered by EPIR. In so doing, Sunovia effectively held the shares hostage without cause and in violation of law in an apparent attempt to gain leverage in discussions about Sunovia's various breaches of the RDS Agreement as described herein.

## COUNT I

### Breach of Contract – RDS Agreement

28. EPIR realleges and incorporates the foregoing Paragraphs 1 through 27 as if fully set forth herein.

29. EPIR performed all of its obligations under the RDS Agreement.

30. Sunovia breached Sections 4.1 and 4.2 of the RDS Agreement by making various public statements regarding EPIR and the parties' relationship without submitting such statements to EPIR for its prior review and approval.

31. Given the false and misleading nature of many of these statements, Sunovia's making of these statements has damaged EPIR in an amount which will be proven at trial.

32. Sunovia has also breached Sections 6.1, 10.5 and 10.6 by failing to pay EPIR: (1) the $156,750.00, plus interest, owed on the resale of EPIR-produced products; and (2) the $1,000,000.00, plus interest, owed for the June 1, 2010 funding payment specified in the RDS Agreement.

## COUNT II

### Breach of Nevada Law – Removal of Restrictive Legends

33. EPIR realleges and incorporates the foregoing Paragraphs 1 through 32 as if fully set forth herein.

34. On May 14, 2010 EPIR presented certain shares that it held in Sunovia stock to Sunovia's Transfer Agent to remove restrictive legends which no longer applied because EPIR had held that stock for six months.

35. On June 3, 2010, Sunovia's Transfer Agent informed EPIR that Sunovia instructed its Transfer Agent not to remove the restrictive legend on the shares tendered by EPIR. Sunovia, through its Transfer Agent, has unreasonably refused to remove these restrictive legends even though EPIR was eligible to have those restrictions removed at that time. As of today, Sunovia (through its Transfer Agent) has continued to refuse to remove the restrictive legends, thereby foreclosing EPIR from trading the stock.

36. Pursuant to Nev. Rev. Stat. § 104.8401(1), an issuer must register the transfer of a certificated security (including delivering certificates without a restrictive legend) on request if (1) the security is endorsed by the appropriate person; (2) reasonable assurance is given that the endorsement if genuine and authorized; (3) the person seeking registration of transfer is eligible to have the security registered in his name; (4) any applicable law relating to the collection of taxes has been complied with; (5) the transfer does not violate any restriction on transfer imposed by the issuer in accordance with Nev. Rev. Stat. § 104.8204; (6) any demand that the issuer not register the transfer has not become effective; and (7) the transfer is in fact rightful. Such conditions have been met in this case.

37. Pursuant to Nev. Rev. Stat. § 104.8401(2), Sunovia is liable to EPIR for losses resulting from the unreasonable delay in registration or failure or refusal to register the transfer, including the failure to deliver certificates without a restrictive legend.

38. Sunovia's share price has declined and Sunovia's financial condition has deteriorated significantly since the date that EPIR first requested that the restrictive legends be removed, thereby representing a loss that EPIR has incurred as a consequence of Sunovia's improper conduct. The amount of such loss will be proven at trial.

**WHEREFORE**, EPIR prays for judgment as follows:

1. For all damages suffered by EPIR as a consequence of Sunovia's breach of the RDS Agreement, together with interest thereon running from the date they were incurred;

2. For an order requiring Sunovia to direct its transfer agent to remove the restrictive legend on the shares held by EPIR such that those shares can be freely transferred

in the open market, as well as damages resulting from Sunovia's unreasonable delay in removing the restrictive legend.

3. For attorneys' fees and other reasonable and necessary expenses incurred in connection with this action; and

4. For such other and further legal, equitable or other relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, EPIR hereby demands a trial by jury.

Date: August 6, 2010

Respectfully submitted,

/s/ Matthew W. Walch
One of the Attorneys for EPIR Technologies, Inc.

Matthew W. Walch (matthew.walch@lw.com)
Michael Faris (michael.faris@lw.com)
Nicholas Siciliano (nicholas.siciliano@lw.com)
Latham & Watkins LLP
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone: (312) 876-7700